UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JENNIFER M. WALKER, et al., | Case No. 2:16-CV-986 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant(s). | |

Presently before the court is defendant State Farm Mutual Automobile Insurance Company's ("State Farm") motion for summary judgment. (ECF No. 17). Plaintiff Jennifer M. Walker[1] filed a response (ECF No. 22), to which State Farm replied (ECF No. 25).

**I.    Facts**

This is an insurance dispute arising from an accident that occurred at the Sand Mountain Recreation Area ("SMRA" or the "sand dunes") and resulted in the death of plaintiff's husband Travis Walker ("decedent").

On October 30, 2015, decedent was riding his ATV with his friend Joshua Munn ("Munn") on the sand dunes when his ATV stalled, causing decedent to dismount and inspect his ATV. (ECF No. 1-1). During decedent's inspection, Christian Schauman ("Schauman") struck decedent with his sandrail. (ECF No. 1-1). Decedent died as a result of the impact. (ECF No. 1-1).

At the time of the accident, decedent had an automobile insurance policy with State Farm, policy number 059135028 (the "policy"), which included $100,000.00/$300,000.00 of

---

[1] Individually, and as surviving spouse, and as administrator and heir; and as parent and natural guardian on behalf of Estate of Travis J. Walker, on behalf of Carter Walker, on behalf of Nolan Walker.

underinsured/uninsured motorist ("UM/UIM") coverage. (ECF No. 1-1). Schauman was uninsured. (ECF No. 1-1).

On November 10, 2015, plaintiff made a claim (no. 28-761N-685) under decedent's UM/UIM policy for the $100,000.00 limit. (ECF Nos. 1-1; 17). On that same date, State Farm sent a reservation of rights letter regarding the definitions of "uninsured motor vehicles" and "underinsured motor vehicles." (ECF No. 19-3).

On November 23, 2015, State Farm issued a check for $3,000.00 to plaintiff for medical payment coverage in connection with funeral expenses (claim no. 28-7M58-801; policy no. 0925-537-28A). (ECF No. 22-1 at 1).

On December 17, 2015, State Farm sent a denial letter to plaintiff's counsel stating that it was unable to provide coverage under the UM/UIM policy because decedent was struck by a sandrail off of public roads and the policy specifically excludes vehicles designated for use off public roads. (ECF No. 19-5). Plaintiff alleges that State Farm denied the claim in bad faith without conducting a reasonable investigation. (ECF No. 1-1).

Plaintiff filed the original complaint in state court on February 1, 2016. (ECF No. 1-1). The complaint alleges six causes of action: (1) breach of contract; (2) violation of the Unfair Claims Practices Act, NRS 686A.310 *et seq.*; (3) breach of the covenant of good faith and fair dealing; (4) breach of fiduciary duty; (5) misrepresentation; and (6) punitive damages. (ECF No. 1-1). State Farm removed the action to federal court on May 2, 2016. (ECF No. 1).[2]

In the instant motion, State Farm moves for summary judgment in its favor on all claims. (ECF No. 17).

## II.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[2] The court ordered State Farm to show cause as to why the action should not be remanded to state court for failure to timely remove the action. (ECF No. 26). In response, State Farm argued that removal was timely because March 31, 2016, was the triggering date. (ECF No. 27). The court disagrees as service was made on March 24, 2016. *See, e.g.*, Nev. Rev. Stat. § 686A.180; Nev. Rev. Stat. § 685B.050(2) ("Service upon the Commissioner as attorney is service upon the principal."). However, in light of plaintiff's failure to timely raise an objection to removal and the brief period at issue, the court hereby discharges its order to show cause.

show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

#### (1) Breach of Contract

Plaintiff alleges that decedent had a policy with State Farm, that plaintiff submitted a claim for the accident, and that State Farm's failure to pay the benefits due under the UM/UIM policy constitutes a material breach of the insurance contract. (ECF No. 1-1 at 6).

In diversity actions, as here, federal courts apply substantive state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). Under Nevada law, contractual construction is a question of law and "suitable for determination by summary judgment." *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990).

In Nevada, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240

James C. Mahan
U.S. District Judge

- 4 -

(Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

In the instant motion, State Farm argues that the breach of contract claim fails because a "sandrail" is not an "uninsured motor vehicle" and is therefore not covered under the policy. (ECF No. 17 at 11). In particular, State Farm asserts that the policy explicitly excludes vehicles designed for use primarily off public roads except while on public roads and that decedent was struck off of public roads with a sandrail, which is primarily an off-road vehicle. (ECF No. 17 at 9).

In response, plaintiff contends that State Farm waived its right to question coverage by acting inconsistently in denying the UM/UIM claim, but approving the medical payment ("MedPay") claim, and that such inconsistent conduct renders the policy ambiguous. (ECF No. 22 at 10–11).

*(i)* **The Policy**

Under Nevada law, "[a]n insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003). "Insurance policy clauses should be understood in their plain, ordinary and popular sense." *Keener v. Cal. Auto. Ass'n Inter-Ins. Bureau*, 814 P.2d 87, 88 (Nev. 1991). "In the insurance context, we broadly interpret clauses providing coverage, to afford the insured the greatest possible coverage; correspondingly, clauses excluding coverage are interpreted narrowly against the insurer." *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 392 (Nev. 2008) (internal quotation marks omitted). "An insurance policy may restrict coverage only if the policy's language clearly and distinctly communicates to the insured the nature of the limitation." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1156–57 (Nev. 2004) (quotation omitted).

Under the "uninsured motor vehicle coverage" section, the policy states that "*We* [(State Farm)] will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle.***" (ECF No. 18-2 at 17). The section sets forth, in relevant part, the following definitions and exclusions:

> . . . .
> ***Uninsured Motor Vehicle*** means a land motor vehicle:
> 1.     the ownership, maintenance, and use of which is:
>       a.     not insured or bonded for bodily injury liability at the time of the accident[.]

```
    . . . .
    3.      an underinsured motor vehicle.
    Uninsured Motor Vehicle that is not an underinsured motor vehicle does not
    include a land motor vehicle:
    . . . .
    5.      designed for use primarily off public roads except while on public roads[.]
    . . . .
    Underinsured Motor Vehicle does not include a land motor vehicle:
    3.      designed for use primarily off public roads except while on public roads[.]
    . . . .
```

(ECF No. 18-2 at 16–17).

Under the "medical payments coverage" section, the policy provides, in relevant part, that there is no coverage for an insured:

```
    . . . .
    9.      Who is struck as a pedestrian by any motor vehicle or any type of trailer
            that:
            a.      is designed for use primarily off public roads while off public roads;
                    or
            b.      runs on rails or crawler-treads[.]
    . . . .
```

(ECF No. 18-2 at 15) (caps and emphasis omitted).

State Farm argues that there is no coverage under the UM/UIM policy because the sandrail is not an uninsured motor vehicle as defined under the policy. (ECF No. 17 at 11). In particular, State Farm contends that the policy explicitly excludes vehicles designed for use primarily off public roads and that "[s]andrails, as the name implies, are designed and intended specifically for operation on sand." (ECF No. 17 at 14). State Farm asserts that while there is no Nevada case directly on point, its conclusion is supported by caselaw from numerous jurisdictions. (ECF No. 17 at 11–14).

In response, plaintiff does not dispute that sandrails are generally used for off-road purposes. (*See* ECF No. 22). Rather, plaintiff disputes whether Schauman's sandrail in particular was designed for use primarily off public roads so as to qualify as an excluded vehicle under the policy's exclusions. (ECF No. 22 at 9). Plaintiff asserts that State Farm relied entirely on Munns's statement that sandrails are generally used for off-road purposes and failed to identify the VIN number of Schauman's sandrail or ascertain whether Schauman's sandrail was registered with the DMV. (ECF No. 22 at 6).

In its reply, State Farm contends that plaintiff's response is devoid of any legal support and that it conducted a sufficient investigation. (ECF No. 25). State Farm asserts that Nicole Carassa ("Carassa "), the State Farm representative who reviewed plaintiff's UM/UIM claim, contacted Munn during her investigation and according to Munn, he did not know the make and model of Schauman's sandrail, but advised that sandrails are registered with a sticker for off-road use, analogous to boat registration stickers, rather than a license plate from the DMV. (ECF Nos. 17 at 8; 19-2 at 7).

### *(ii)* *Ambiguity*

"Interpretation of the contract, including whether it is ambiguous, is a matter of law." *Allstate Fire & Cas. Ins. Co. v. Devine*, No. 2:12-CV-523 JCM NJK, 2013 WL 1104275, at *2 (D. Nev. Mar. 15, 2013). Under Nevada law, courts interpret unambiguous insurance provisions "according to the plain and ordinary meaning of [their] terms." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). "A provision in an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011) (internal quotation marks omitted). "[A]ny ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." *Id.*; *see also Farmers Ins. Exch. v. Young*, 832 P.2d 376, 377 (Nev. 1992).

"However, Nevada courts will not rewrite unambiguous provisions or increase the insurer's obligation to the insured where the parties intentionally and unambiguously limited coverage." *Prime Ins. Syndicate, Inc. v. Damaso*, 471 F. Supp. 2d 1087, 1095 (D. Nev. 2007) (citing *United Nat'l Ins. Co.*, 99 P.3d at 1157). "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *Id. (quoting United Nat'l Ins. Co.*, 99 P.3d at 1157).

Here, plaintiff does not argue that the policy's language itself is ambiguous. Nor does plaintiff argue that the policy created a reasonable expectation of coverage as drafted. Rather, plaintiff contends that State Farm's inconsistent decisions on sections containing identical definitions renders the policy ambiguous. (ECF No. 22). Plaintiff asserts that the exclusionary language in the uninsured motor vehicle section of the policy is virtually identical to the

exclusionary language in the MedPay provision, rendering State Farm's decision to deny the UM/UIM claim inconsistent. (ECF No. 22 at 4–5, 10).

The court disagrees. The language of the policy exclusion is not reasonably susceptible to more than one interpretation. The plain language of the policy excludes vehicles designed primarily for off-road use, here sandrails, unless the accident occurred on public roads, which it did not. According to plaintiff's own description, the accident occurred on the sand dunes, not along the sand dunes. (ECF No. 22 at 4). Specifically, plaintiff states that decedent was riding his ATC "on the sand dunes" and "[a]t some point while riding the Yamaha, it stalled" and decedent was struck by Schauman's sandrail. (ECF No. 22 at 4).

In the police report, the responding officer on the scene stated that he responded to "a report of a subject who had been struck by a sandrail off-highway vehicle." (ECF No. 18-1 at 4). The officer further reported that the accident was "approximately three-quarters of the way (3/4) up the mountain[,] the surface of which was "made of soft, fine sand that made it difficult to move with ease." (ECF No. 18-1 at 4). The officer reported that upon inspecting the sandrail, he was unable to locate a VIN and was informed by Christian that it was recently purchased and work on the sandrail was recently completed. (ECF No. 18-1 at 5).

The plain language of the policy exclusion at issue is unambiguous. Plaintiff's damages are unambiguously excluded under the policy's exclusion as decedent was struck by an off-road vehicle (the sandrail) while off public roads (on the sand dunes), thereby barring recovery.

### *(iii)* *Waiver*

State Farm argues that payment under the MedPay provision does not constitute a waiver to coverage defenses. (ECF No. 25 at 8). State Farm asserts that the MedPay payment was made by a separate claims representative, under a separate claim made pursuant to a separate policy. (ECF No. 25 at 8). In particular, State Farm asserts that the UM/UIM claim was made under the decedent's motorcycle policy, which does not contain a MedPay provision. (ECF No. 25 at 8).

In response, plaintiff argues that State Farm waived its rights to question coverage based on the nature of the vehicle because State Farm failed to raise the ineligible vehicle issue when it authorized payment for decedent's funeral expenses in the amount of $3,000.00 under the MedPay

provision of the policy. (ECF No. 22 at 4). In particular, plaintiff contends that State Farm's inconsistent conduct—denying the UM/UIM claim, but approving the MedPay provision—creates a genuine dispute as to whether Schauman's sandrail is an excluded vehicle. (ECF No. 22 at 10–11).

A party waives a legal right when it intentionally relinquishes a known right. *Prime Ins. Syndicate, Inc.*, 471 F. Supp. 2d at 1098 (citing *Santino v. Great Am. Ins. Co.*, 9 P.2d 1000, 1004 (Nev. 1932)); *see also Thompson v. N. Las Vegas*, 833 P.2d 1132, 1134 (Nev. 1992) (holding that waiver requires an "intentional relinquishment of a known right," and an effective waiver "must occur with full knowledge of all material facts"). "Waiver may be implied from conduct which evidences an intention to waive a right, or by conduct inconsistent with any other intention than to waive a right." *Am. Guarantee & Liab. Ins. Co. v. Flangas McMillan Law Grp., Inc.*, No. 2:11-CV-188-KJD-RJJ, 2012 WL 628511, at *5 (D. Nev. Feb. 24, 2012) (citing *McKellar v. McKellar*, 871 P.2d 296, 297 (Nev. 1994)). Generally, whether a waiver has occurred is a question for the fact-finder. *See, e.g.*, *McKellar*, 871 P.2d at 297.

Plaintiff, in essence, argues that waiver should be implied based on State Farm's failure to preserve its policy defenses under the motorcycle policy in State Farm's payment of benefits under the MedPay provision of a separate policy. Plaintiff offers no other evidence and cites to no authority to support her argument that State Farm's conduct under a different policy constituted waiver under the motorcycle policy presently at issue. Nor does plaintiff provide any competent evidence to suggest that State Farm intentionally relinquished a known right.

To the contrary, State Farm explicitly reserved its right to assert policy defenses in its November 10th letter regarding the UM/UIM claim under the motorcycle policy. (ECF No. 19-3). "Nevada law 'does not allow a litigant to use waiver to extend the coverage or scope of an insurance policy to include claims expressly excluded from the contract' absent evidence of misconduct, such as an 'sandbagging,' failing to investigate a claim, or where the insured relied on the insurer's misrepresentation to her detriment." *First Nat'l Bank of Ely v. Progressive Cas. Ins. Co.*, No. 3:11-CV-00859-RCJ, 2012 WL 5944847, at *10 (D. Nev. Nov. 27, 2012) (quoting *Prime Ins. Syndicate, Inc.*, 471 F. Supp. 2d at 1098–99). State Farm has provided evidence that it

investigated the UM/UIM claim, and plaintiff has failed to show any evidence suggesting that she made any reliance to her detriment.

In light of the foregoing, the court will grant State Farm's motion for summary judgment as to this claim. Plaintiff has failed to raise a genuine of material fact that the accident was covered under the UM/UIM policy, that the policy was ambiguous, or that State Farm waived its policy defenses.

### **(2) Unfair Insurance Practices Act, NRS 686A.310 *et seq.* ("UIPA")**

Plaintiff asserts that its expert Jeffrey Stempel opined that State Farm performed an inadequate investigation and failed to make a reasonable settlement offer to plaintiff and instead denied benefits under the UM provision of the policy. (ECF No. 22 at 13).

Subsection (1) of NRS 686A.310 sets forth various activities considered to be an unfair practice. Nev. Rev. Stat. § 686A.310(1). Specifically, insurers violate UIPA by:

> . . . .
> (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.
> . . . .
> (g) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

Nev. Rev. Stat. § 686A.310(1)(e), (g). Subsection (2) of NRS 686A.310, in turn, provides that "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." Nev. Rev. Stat. § 686A.310(2).

State Farm contends that there is no support for the claim that State Farm failed in any duty imposed by the UIPA because its denial of coverage was proper. (ECF No. 17 at 16–17). The court agrees.

As an initial matter, the court notes that plaintiff's allegations as to this cause of action are conclusory. Plaintiff's complaint does not include any facts to support this claim. Moreover, plaintiff fails to provide evidence showing a genuine dispute of material fact for this cause of action. Plaintiff does not present any proof that State Farm acted in the manner specified by any of the subsections above.

As the court has held, plaintiff cannot show that she was entitled to recover under the policy. Thus, State Farm cannot be liable for failing to effectuate a settlement. Further, plaintiff does not provide any support for her contention that State Farm's communications with plaintiff, or its ultimate coverage decision, were delayed. Plaintiff also fails to produce any substantive evidence in support of her allegations of delay regarding State Farm's investigation and processing of plaintiff's claims.

Accordingly, the court will grant State Farm's motion for summary judgment as to this claim.

### (3) Breach of the Covenant of Good Faith & Fair Dealing (Bad Faith)

Plaintiff alleges that State Farm failed to deal fairly and in good faith by denying plaintiff's UM/UIM benefits without a reasonable basis or proper cause. (ECF No. 1-1 at 7).

State Farm argues that it had a genuine, well-reasoned, and legally supportable position as to why no coverage existed for the subject claims. (ECF No. 17 at 18). State Farm thus maintains that summary judgment is proper. (ECF No. 17 at 18).

In response, plaintiff contends that a genuine issue exists as to whether State Farm conducted a thorough and timely investigation and that a jury could find that State Farm's investigation was inadequate so as to constitute bad faith breach. (ECF No. 22 at 13–15).

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

"When one party performs a contract in a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991). A breach of the duty of good faith and fair dealing can occur "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract." *Id.* at 922–23.

To prevail on a theory of breach of the covenant of good faith and fair dealing, a plaintiff must establish each of the following: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

"To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (1998), *modified on denial of reh'g*, 979 P.2d 1286 (Nev. 1999) (citing *Falline v. GNLV Corp.*, 823 P.2d 888 (Nev. 1991)); *see also Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1249 (D. Nev. 1994) (refusing to find bad faith where insurance company investigated damage and requested documents, despite insured's argument that investigation was incomplete). "Nevada's bad faith cases do not support [the] view that an insurer who has made a legitimate investigation of a claim must continuously track down subsequent theories of coverage proffered by the insured." *Pioneer Chlor Alkali Co.*, 863 F. Supp. at 1249.

Plaintiff has failed to show a genuine issue of material fact as to this claim. State Farm provided evidence that it investigated plaintiff's claim and that it denied plaintiff's claim because the sandrail was an excluded vehicle and the accident occurred while off public roads. *Cf. Powers*, 962 P.2d at 604 (citing substantial evidence supporting bad faith, including evidence tampering, expert opinions that investigation was incomplete and violated company's own policies, and investigator's own admission of report errors known and ignored by company). Plaintiff cannot show bad faith as State Farm reasonably denied coverage.

Accordingly, the court will grant State Farm's motion for summary judgment as to this claim.

. . .

. . .

. . .

**(4) Breach of Fiduciary Duty**

Plaintiff alleges that State Farm owed plaintiff a fiduciary duty and held itself out as a fiduciary selling insurance policies to the public by issuing a motor vehicle insurance policy and accepting premiums. (ECF No. 1-1 at 8).

"[B]reach of fiduciary duty seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009). "In Nevada, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009).

State Farm argues that summary judgment is proper because breach of fiduciary duty is not a cognizable claim against an insurer. (ECF No. 17 at 18–19). The court agrees.

Under Nevada law, "breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing." *Powers*, 962 P.2d at 603. Thus, the court will grant State Farm's motion for summary judgment as to this claim.

**(5) Misrepresentation**

Plaintiff alleges that State Farm made written promises via the UM/UIM policy to pay benefits for the purpose of inducing plaintiff to enter into the policy of insurance and pay additional premiums thereunder. (ECF No. 1-1 at 9). Plaintiff further alleges that State Farm never intended to comply with such representations and consistently refused to do so, thereby making such representations with the intent to defraud plaintiff. (ECF No. 1-1 at 9).

To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) that defendant made a false representation; (2) with knowledge of its falsity; and, (3) with the intent to induce reliance on the misrepresentation. *Nau v. Sellman*, 757 P.2d 358, 360 (Nev. 1988). In alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[A] plaintiff asserting fraud against a corporate [entity] must state the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Roberts v. McCarthy*, No.

2:11-cv-00080, 2010 WL 1363811, at *3 (D. Nev. Apr. 11, 2011) (quoting *Spencer v. DHI Mortg., Inc.*, 642 F.Supp.2d 1153, 1164 (E.D. Cal. 2009)).

As discussed above, plaintiff's damages fell within a UM/UIM policy exclusion and was, therefore, not covered under the policy. Thus, plaintiff has failed to show that State Farm made a false representation.

Accordingly, the court will grant State Farm's motion for summary judgment as to this claim.

**IV.  Conclusion**

Based on the aforementioned, the court will grant State Farm's motion for summary judgment on all of plaintiff's claims. Plaintiff has failed to raise a genuine issue of material fact sufficient to withstand summary judgment.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that State Farm's motion for summary judgment (ECF No. 17) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED April 26, 2017.

_____
UNITED STATES DISTRICT JUDGE